UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAWANZA WILLIAMS,                          No. 19-cv-9405 (NLH

       Petitioner,

    v.                                       OPINION

F.C.I. FAIRTON WARDEN,

      Respondent.

APPEARANCE:

Jawanza Williams
13871-089
Fairton
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

    *Petitioner Pro se*

Craig Carpenito, United States Attorney
Anne B. Taylor, Assistant United States Attorney
Office of the U.S. Attorney
District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101

    *Attorneys for Respondent*

HILLMAN, District Judge

    Petitioner Jawanza Williams, a federal prisoner detained at

FCI Fairton, filed a petition for writ of habeas corpus under 28

U.S.C. § 2241 challenging a prison disciplinary hearing which

resulted in a loss of 40 days of good conduct credit.  ECF No.

1

1. Respondent United States opposes the petition.  ECF No. 3.
For the reasons stated herein, the petition will be denied.

I.   <u>BACKGROUND</u>

On June 26, 2018, Petitioner was charged with prohibited
act 113 (possession of any narcotics, marijuana, drugs, alcohol,
intoxicants, or related paraphernalia not prescribed by medical
staff); prohibited act 203 (threatening another with bodily
harm); and prohibited act 307 (refusing to obey an order).  ECF
No. 3-4 at 2.  According to Incident Report 3139584:

> On June 26, 2018 at approximately 7:15pm while working
> in Compound#1 I stopped Inmate Williams #13871-089 for
> a random pat search.  During the random pat search I
> recovered an orange piece of paper in inmate Williams ID
> holder with his ID and laundry cards.  I asked Williams
> what was in his ID holder and he stated "You put that in
> there."  I escorted Williams to the Lieutenants office
> where I gave inmate Williams a direct order to remove
> his zip up sweatshirt and place that on the table,
> Williams stated in an aggressive manner "No it's fucking
> cold."  I then gave Williams a second direct order to
> remove his sweatshirt and he stated "Fuck you it's cold."
> I then placed inmate Williams in the Lieutenants holding
> cell.  While Williams was in the holding cell he stated
> to me "You're a soft ass n****, if we were outside id
> fuck you up"  Health Services RN Fisher identified the
> orange piece of paper to be suboxone.  I immediately
> notified the Ops Lieutenant.

<u>Id.</u>  Petitioner responded "no comment" to the committee.  <u>Id.</u>
He received a copy of the incident report on June 27, 2018, and
the committee referred the incident to a Disciplinary Hearing
Officer ("DHO") on July 2, 2018.  <u>Id.</u>  The report indicates
Petitioner "displayed a fair attitude during the investigative

process.  Inmate Williams stated 'He never told me to take off my jacket.'"  Id. at 3.

On July 2, 2018, Petitioner received notice of his rights before the DHO.  Id. at 5.  He was informed the hearing would be held on the next available docket, and he declined to have a staff representative or witnesses appear on his behalf.  Id. at 7.  The hearing took place on July 12, 2018.  Id. at 9.  In addition to the incident report, the DHO considered a memorandum written by Nurse Fisher regarding the identification of the paper-like substance as suboxone.  Id.  Nurse Fisher stated "[o]n June 26th, 2018 at approximately 2000, I was presented with a small piece of medication strip for identification.  I identified the strip as Suboxone by the white N, pale orange color, and consistency of the strip."  Id. at 12.  Petitioner elected to remain silent and only responded "no comment."  Id. at 9.

The DHO concluded that "[b]ased upon the eyewitness account of the reporting officer, the supporting staff memorandum, and the adverse inference drawn from your silence, the DHO finds that the greater weight of the evidence indicates you did commit the prohibited act of Possession of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia Not Prescribed by Medical Staff, Code 113."  Id. at 10.  The DHO dismissed the other two charges as duplicative.  Id.  He

sanctioned Petitioner with 90 days loss of visitation, 30 days of disciplinary segregation, and 40 days loss of good conduct time.  Id.

II.  ANALYSIS

Petitioner asserts his disciplinary charge should be reversed as it fails to meet the "some evidence" requirement of due process.  Respondent asserts Petitioner failed to exhaust his administrative remedies and is otherwise not entitled to relief.

"Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241." Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000).  "We require exhaustion for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).  Failure to exhaust these remedies "generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice . . . ." Id. at 761.

The BOP's administrative remedy system has three tiers allowing "an inmate to seek formal review of an issue relating

4

to any aspect of his/her own confinement." 28 C.F.R. §
542.10(a).  An appeal of a DHO decision "shall be submitted
initially to the Regional Director for the region where the
inmate is currently located."  28 C.F.R. § 542.14(d)(2).  This
appeal is filed on a BP-10 form.  "An inmate who is not
satisfied with the Regional Director's response may submit an
Appeal on the appropriate form (BP-11) to the General Counsel
within 30 calendar days of the date the Regional Director signed
the response."  28 U.S.C. § 542.15(a).  "Appeal to the General
Counsel is the final administrative appeal."  Id.

    BOP Paralegal Specialist Ondreya Barksdale filed a
declaration stating that she searched the BOP's computerized
index for records of Petitioner's administrative appeals.
Declaration of Paralegal Specialist Ondreya Barksdale
("Barksdale Dec."), ECF No. 3-1 ¶ 6.  According to the BOP's
records, Petitioner's DHO appeal was rejected as untimely on
November 23, 2018.  ECF No. 3-2 at 9 ("Your appeal was due by 9-
5-18. It was received on 11-21-18.").  His appeal to the Central
Office on December 17, 2018 was also rejected as untimely.
Barksdale Dec. ¶ 7.  On February 4, 2019, the Central Office
sent a notice to Petitioner: "if staff provide a memo stating
the late filing was not your fault, then re-submit to the level
of the original rejection."  ECF No. 3-2 at 9.  Petitioner
submitted this petition on April 5, 2019.  ECF No. 1 at 9.

Petitioner did not file timely appeals of his disciplinary charges. His "failure to satisfy the procedural rules of the Bureau's administrative process constitutes a procedural default." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Petitioner's response appears to be missing a page, ECF No. 4, so it is not clear whether Petitioner responded to the exhaustion argument. The Court declines to decide whether Petitioner exhausted his administrative remedies because his petition fails on its merits. See Ridley v. Smith, 179 F. App'x 109, 111 (3d Cir. 2006) (noting court has discretion to excuse default and reach merits)

Good conduct credit may only be taken from an inmate if due process protections are observed. "Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. When such a statutorily created right exists, a prisoner has a constitutionally protected liberty interest in good time credit." Denny v. Schultz, 708 F.3d 140, 143-44 (3d Cir. 2013) (internal citations and quotation marks omitted). In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974).[1]

---

[1] Under Wolff, inmates must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent

Moreover, the "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (quoting Wolff, 418 U.S. at 558).

Petitioner claims the "some evidence" requirement of due process was not met in this case.  He argues Nurse Fisher's identification of the paper-like substance as suboxone by "merely looking at it and then validating it from eye-sight alone" is insufficient to positively identify the paper as contraband.  ECF No. 1-1 at 3.  He asserts the prison was required to test the strip before convicting him of possession "because the only way any alleged substance can be confirmed to be a drug it must be tested."  Id. at 3-4 (emphasis in original).

In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is any evidence in the

---

with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-67).  Petitioner does not argue in his petition that any of these requirements were not met, and the Court's review of the record indicates that the Wolff requirements were satisfied.

record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. 445, 455-56 (1985). See also Denny, 708 F.3d at 145 ("[A] reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause."). This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" McCarthy v. Warden Lewisburg USP, 631 F. App'x 84, 86-87 (3d Cir. 2015) (quoting Hill, 472 U.S. at 455). "Once the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." Cardona v. Lewisburg, 551 F. App'x 633, 637 (3d Cir. 2014).

The DHO indicated he relied on Officer McCray's eyewitness account of finding the strip in Petitioner's possession, Nurse Fisher's identification of the strip, and Petitioner's silence at the hearing. ECF No. 3-4 at 10. Nurse Fisher based the identification as the strip as Suboxone due to "the white N, pale orange color, and consistency of the strip." Id. at 12. Here, a medical professional identified a controlled substance based on its unique characteristics. This is enough to satisfy

the "some evidence" standard.  Accordingly, the petition will be denied.

III. <u>CONCLUSION</u>

The petition for writ of habeas corpus will be denied.  An appropriate order follows.


Dated: _January 4, 2021          __s/ Noel L. Hillman _____
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.